**[Not for Publication]**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                              :
HUNT CONSTRUCTION GROUP, INC., :
                                              :
    Plaintiff,                       :   Civil Action No. 08-3550 (FLW)
                                              :
    v.                                   :
                                              :   OPINION
THE HUN SCHOOL OF PRINCETON,   :
                                              :
    Defendant/ Third-Party Plaintiff, :
                                              :
    v.                                   :
                                              :
G.R. MURRAY INSURANCE and      :
MICHAEL SABBAGH,               :
                                              :
    Third-Party Defendants.          :
_____:

**WOLFSON, United States District Judge:**

    Presently before this Court is the motion of Plaintiff, Hunt Construction Group, Inc. ("Plaintiff" or "Hunt"), to dismiss the Seventh Counterclaim of Defendant, The Hun School of Princeton ("Defendant" or "the Hun School"), pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff brought suit against Defendant for breach of a construction contract because Plaintiff allegedly was not paid in full for its services at the Hun School. Defendant's Seventh Counterclaim alleges that Hunt violated New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, et seq. ("NJCFA"), because it made misrepresentations, material omissions and misstatements relating to the standard of care under the parties' Contract and misrepresented the insurance coverage and deductible information. For the reasons stated herein, the Court grants Plaintiff's Motion and Defendant's Seventh Counterclaim is stricken.

I.      **Background and Procedural History**

Since Defendant moves to dismiss Plaintiff's seventh counterclaim pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Defendant's allegations to be true. The Court will recount facts only relevant on this Motion.

In December 2004, Hunt and the Hun School entered into a construction contract (the "Contract") that guaranteed a maximum price of $10,226,000.00, which was subsequently increased to $11,380,037. Compl. ¶ 13; Counterclaims ¶¶ 6-7. Although Hunt allegedly performed construction services valued at $11,380,037, the Hun School has paid only $11,063,024 to Hunt. Compl. ¶ 13; Counterclaims ¶ 53. Under the Contract, Hunt, an Indiana Corporation with its principal place of business located in Arizona, was to construct a new athletic building, a connector between the new athletic building and an existing athletic building, and complete some other renovations at the Hun School (collectively "the Project"), a New Jersey corporation located in Princeton, New Jersey. Compl. ¶¶ 1-2; Counterclaims ¶¶ 5, 8, 9.

On July 11, 2008, Hunt filed a Complaint alleging that the Hun School owes $317,013.00 on the contract. On August 5, 2008, Defendant filed its Answer, denying Plaintiff's allegations, claiming that this outstanding balance is not owed to Plaintiff due to defects in the workmanship and flood damage that was caused by deficient construction and improper management of the work being performed by Hunt's subcontractors. In addition, Defendant asserted seven Counterclaims against Hunt, seeking declaratory judgment that Hunt is liable under the contract for the flood damage, and asserting claims of breach of contract, breach of duty of good faith and fair dealing, contractual indemnification, setoff, promissory estoppel and violations of the

NJCFA.

Defendant alleges that Plaintiff and/or its subcontractors failed to properly "grade, manage the process of grading, and/or provide temporary storm water management or drainage/flood control measures in the area of the grading, failed properly to supervise or direct its subcontractor, and otherwise performed the grading in an unworkmanlike and deficient manner." Counterclaims ¶ 24. Defendant alleges that as a result of Plaintiff's failure to properly grade the Property, during a storm on July 21 or July 22, 2006, flooding occurred in the Gymnasium, which caused damages, including warping and coupling of the floor beyond repair. Id. ¶¶ 25-26. Defendant further alleges that it provided timely notice to Plaintiff, but Plaintiff failed to mitigate or repair the damage. Id. ¶¶ 28-29. The initial estimated costs to repair and replace this floor were $274,864.78. Id. ¶ 27. Allegedly, the Hun School submitted a claim under its Builder's Risk Policy at Hunt's request, but the claim was denied because the policy explicitly excluded this damage. Id. ¶¶ 31-32. The Hun School allegedly then requested that Hunt submit a claim under the insurance policy Hunt was to obtain pursuant to Section 11.1 of the General Conditions of the Agreement, but Hunt initially refused, and then Hunt claimed that it did submit a claim, only to advise the Hun School that the amount of damages caused by the flood was below the deductible under the policy it purchased. Id. ¶ 33-36.[1] On February 7, 2007, the Hun School allegedly notified Hunt that it intended to offset the amount of costs it incurred to replace the floor against the amounts owed to Hunt for the Project under the Contract. Id. ¶ 38. Defendant alleges that the damages and costs incurred were the result of Hunt's negligence, and

---

[1] The Hun School complains that Hunt did not submit the claim under its insurance policy because insurance coverage was not available given the amount of the deductible under the policy. Counterclaim ¶ 37.

that thereafter, Hunt allegedly began a pattern of delay and failed to proceed with the remaining work under the Contract.  Id. ¶ 40.

In addition, the Hun School allegedly requested that Hunt and/or its subcontractors repair openings in an exterior wall of the Gymnasium at the school, but they failed to make such repairs in a timely manner.  Id. ¶¶ 46-47.  On July 5, 2007, another storm caused a second flood and additional damage to the new, replacement wood floor in the Gymnasium.  Id. ¶¶ 48-49.  Defendant alleges that this damage was "directly and proximately caused by the failure of Hunt and/or its subcontractors properly to provide storm water drainage or otherwise control the site, and failure properly to construct and/or repair open holes in the exterior wall and gaps under the doors of the Gymnasium building as required by the Hun School required by the Agreement."  Id. ¶ 48.

The Hun School alleges that the actual cost to repair and replace the floor after the July 2006 flood was $299,571.03.  Id. ¶ 50.  The damage from the July 2007 flood allegedly cost the Hun School $31,947.58.  Id. ¶ 51.  The Hun School alleges that it withheld $317,014.00 from the final payment to Hunt because the damages from the July 2006 and July 2007 floods were caused by Hunt's negligent acts.  Id. ¶ 53.  The Hun School also alleges that Hunt failed to reimburse it for the costs it incurred to repair this damage in excess of the amount withheld, and that Hunt continues to demand that the Hun School pay the $317,014.00 withheld from the final payment.  Id. ¶ 56.

In its Seventh Counterclaim, Defendant alleges that Hunt violated the NJCFA because it made misrepresentations, material omissions, and misstatements to the Hun School in that Hunt misrepresented that it would "fully, professionally, and properly perform the work by abiding by

4

the standard of care [of] similarly situated contractors," and purchase and maintain adequate insurance, but that Hunt did not satisfy the standard of care of similarly situated contractors and further mislead Defendant as to the insurance coverage and deductible. Id. ¶¶ 15-21, 98-99, 101. Defendant alleges that Hunt's conduct directly and proximately caused the Hun School to sustain damages and entitles it to recover compensatory damages, treble damages, attorneys' fees and costs. Id. ¶¶ 102-103.

On September 10, 2008, Plaintiff filed the instant motion to dismiss Plaintiff's Seventh Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that Defendant fails to state a claim under the NJCFA. Defendant argues that its allegations do state a cause of action based on misrepresentation and deceptive practices in violation of the NJCFA. As the amount in controversy exceeds the sum of $75,000 and the parties are of diverse citizenship, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court grants Plaintiff's Motion.

## II.     Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2

5

L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1968 (quoting Conley, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 1965.  As the Third Circuit has stated, "[t]he Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.Ct. at 1965).

**III.   Discussion**

Plaintiff moves to dismiss Defendant's Seventh Counterclaim pursuant to Rule 12(b)(6) because Defendant fails to state a claim under the NJCFA, and at best, states a claim for breach of contract.  Defendant, however, contends that its allegations that Plaintiff (1) failed to adhere to the standard of care provided for in the Contract, Counterclaims ¶¶ 33-35, 98-99; (2) purchased inadequate insurance under the Contract, Id. ¶ 16; and (3) Plaintiff mislead Defendant with respect to submitting a claim under the said insurance, Id. ¶¶ 35-36, go beyond mere allegations of breach of contract and show that Hunt made affirmative misrepresentations on which the Hun School relied.

To state a claim under the NCJFA, a Plaintiff must allege:

"(1) [U]nlawful conduct by the defendants; (2) an ascertainable loss on the part of the

>plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiffs ascertainable loss." [Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007)] (citing Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454 (1994)). The NJCFA defines unlawful practice broadly, as including but not limited to unconscionable commercial practice, deception, fraud, false promise, false pretense, misrepresentation, or knowing concealment. N.J.SA. § 56:8-2.

Construcciones Haus Soceidad v. Kennedy Funding, Inc., No. 07-0392, 2008 U.S. Dist. LEXIS 33685, at * 14, 2008 WL 1882857 (D.N.J. Apr. 24, 2008).  Further, "[t]he pleading requirements of Rule 9(b) apply to . . . NJCFA claims as well as . . . common law fraud claims." Slim CD, Inc. v. Heartland Payment Sys., No. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *32 (D.N.J. Aug. 22, 2007) (citing F.D.I.C. v. Bathgate, 27 F.3d 850, 856 (3d Cir. 1994)).

In Frederico, the court elucidated what must be alleged to satisfy the heightened pleading standard:

>Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." [Lum v. Bank of America, 361 F.3d 217, 223-24 (3d Cir. 2004)].  To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.  See id. at 224.

Frederico, 507 F.3d at 200.

"To violate the [NJCFA], a person must commit an 'unlawful practice' . . . [which] fall[s] into three general categories: affirmative acts, knowing omissions, or regulation violations." Cox v. Sears Roebuck & Co., 138 N.J. 2, 17 (1994) (citing N.J.S.A. 56:8-2 & 8-4).  Although intent is not an essential element with an affirmative act, it is with an omission.  Cox v. Sears Roebuck & Co., 138 N.J. at 18.[2]  To constitute an affirmative misrepresentation, a statement must be "one

---

[2] Under the NJCFA "when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." Cox, 647 A.2d at 462 (citing Chattin v. Cape May Greene, Inc., 124 N.J. 520, 522,

7

which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 607 (1997).  In the context of a fraud claim under New Jersey case law, "a promise may constitute a misrepresentation only if the promisor knew at the time the promise was made that it could not be fulfilled.  The mere non-performance of a promise is not fraud." Bubbles N' Bows, LLC v. Fey Publishing Co., No. 06-5391, 2007 WL 2406980, at *9 (D.N.J. Aug. 20, 2007) (internal citations omitted).  A statement or misstatement as to future expectations or probabilities, or as to what will or will not be done in the future, does not constitute a misrepresentation even though it may turn out to be wrong.  See Id.

      Hunt argues that although the Hun School did not explicitly state whether it was proceeding on its claim based upon an omission or affirmative misrepresentation, the facts alleged fail to state a claim under any theory of the NJCFA.  The Hun School argues that its allegations are sufficient to state a NJCFA claim based on an affirmative misrepresentation.  Because the Hun School does not dispute that it is not alleging that Hunt violated the NJCFA because it committed an unconscionable commercial practice or that Hunt's conduct constituted an omission, Df. Opp. at 6, n. 2, the Court need not address Hunt's arguments in this regard.[3]

---

591 A.2d 943 (1991)); see also Slim CD, 2007 U.S. Dist. LEXIS 62536 at *32 (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 691 A.2d 350, 365 (N.J. 1997)) ("[W]hen the alleged consumer fraud consists of an omission, intent is an essential element of the charge").  While the heightened pleading standard of Rule 9(b) allows essential elements of the omission under the NJCFA, such as intent, to be alleged generally, such elements still need to be alleged.  See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge and other conditions of mind of a person may be alleged generally").

    [3]The Court notes, however, that based on its allegations here, the Hun School fails to state a claim that Hunt violated the NJCFA because of an unconscionable commercial practice or based on an omission.  See Cox v. Sears Roebuck & Co., 138 N.J. 2 (1994); New Mea

Therefore, the inquiry for the Court is whether the Hun School sufficiently alleges that Hunt made an affirmative misrepresentation in violation of the NJCFA.

The Hun School concedes that a mere breach of contract, without more, is not sufficient to support a claim under the NJCFA.  See Cox v. Sears Roebuck & Co., 138 N.J. at 18; Barry v. New Jersey State Highway Authority, 245 N.J. Super. 302, 308-09 (Sup. Ct. Atlantic Co. 1990).  In Barry, the court wrote:

> If plaintiff's argument is accepted and the Act is read literally, N.J.S.A. 56:8-2 can be said to proscribe any false promise in connection with the sale or advertisement of merchandise or real estate.  If that is what is intended, then every breach of a contract for the sale of such items would arguably represent a violation.  For example, all contracts include a promise of performance, either express or implied.  17 Am.Jur.2d, Contracts, § 2 at 334 (1964).  A breach of that promise arguably makes the promise "false".  Given such an approach, that same breach makes the unfulfilled promise either a misrepresentation, fraudulent or both.
>
> On the other hand, despite the liberality with which the Act is to be read, Levin v. Lewis, 179 N.J. Super. 193, 200, 431 A.2d 157 (App. Div. 1981), no one has yet suggested that the legislature intended to make every breach of contract a violation.  Indeed, it has been recognized by our judiciary that, despite its broad language, reasonable limits must be placed upon the operation of the Act in order that its enforcement will properly reflect legislative intent, however ascertained.  DiBernardo v. Mosley, 206 N.J. Super. 371, 375, 502 A.2d 1166 (App. Div.1986).  If the intent is to protect consumers from fraud and fraudulent practices in the sale of goods and services, as has been stated, then certainly something more than a mere breach of contract is required.

In this case, the Hun School alleges that Hunt made affirmative misrepresentations "that it would fully, professionally, and properly perform the work by abiding by the standard of care [of] similarly situated contractors."  Counterclaim ¶ 98.  This allegation alone is merely a claim that Hunt breached the Contract.  The Hun School, however, argues that its claim is based on more than Hunt's allegedly false promise to adhere to the standard of care of similarly situated

---

Construction Corp. v. Harper, 203 N.J. Super. 486 (App. Div. 1985).

contractors, and includes Hunt's alleged misrepresentations that it would purchase insurance as set forth in the contract and its submission of a claim to Plaintiff's liability insurer. None of these alleged material misrepresentations are sufficient to support a claim against Hunt for a violation of the NJCFA.

The Hun School argues that Hunt failed to purchase adequate insurance to protect the Hun School and provide Hunt with coverage for any claims arising out of Hunt's performance under the Contract. Under Section 11.1.1 of the General Conditions of the Contract, Hunt "shall purchase from and maintain . . . such insurance and will protect [Hunt] from claims . . . which may arise out of or result from [Hunt's] operations under the Contract for which [Hunt] may be legally liable. . ." including "claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom . . ." Counterclaims ¶ 9; Morante Decl. Ex. A. The Hun School complains that although Hunt purchased an insurance policy, it had such a high deductible that Hunt effectively was not insured as required by the Contract.

Hunt argues that the Contract does not establish a required deductible on the liability insurance Hunt was obliged to obtain. Hunt asserts that the Hun School's position that Hunt violated the NJCFA is "based on the mere fortuity that the policy procured by Hunt had a deductible that exceeded the majority of the alleged damages incurred by the School." Pl. Reply at 6 (citing Df. Opp. at 5). By Defendant's logic, Plaintiff argues, "if the School actually incurred $2,000,000 in damages, such that the policy procured by Hunt would cover the vast majority of the claim, there would cease to be a violation of the [NJCFA]. Such a position is untenable." Id. In this case, the parties do not dispute that the Contract did not explicitly state a required

10

deductible for the liability insurance policy to be procured by Hunt. Moreover, the Hun School does not allege that at the time of the contract Hunt could not or would not fulfill its promise to procure adequate insurance. The Hun School's allegation that Hunt failed to obtain adequate insurance, or that Hunt made an affirmative misrepresentation that it had adequate insurance, but did not, fails to state a claim under the NJCFA because neither a claim for breach of contract nor fraud in the fulfillment of the contract is actionable. See Anderson v. Modica, 4 N.J. 383, 391-392, 73 A.2d 49, 52 (N.J. 1950) (citing cases); Bubbles N' Bows, 2007 WL 2406980, at *9. Accordingly, this alleged misrepresentation of failure to procure adequate insurance is insufficient to state a claim under the NJCFA.

The Hun School also argues that Hunt deceived and misled it with respect to Hunt's insurance policy well-after the Contract was executed because Hunt allegedly told the Hun School that it submitted a claim for the flood damage to its insurer, while knowing that its deductible was in excess of the amount of damages. The Hun School alleges that after the flood and resulting damage and the Hun School's own insurer denied coverage, it requested that Hunt submit a claim under Hunt's the insurance policy pursuant to the Agreement. Counterclaims ¶¶ 33-34. Although Hunt allegedly initially refused to submit a claim, then it subsequently advised the Hun School that it did submit a claim, but did not provide its insurer's response to the claim. Id. ¶¶ 34-35. Thereafter, Hunt allegedly informed the Hun School that its deductible was in excess of the amount of damages, which the Hun School complains Hunt knew all along. Id. ¶¶ 36-37.

Hunt's alleged misstatement that it would submit a claim for the Hun School's damages due to the flooding under its insurance policy pursuant to the Agreement is, at best, a

misstatement as to an action after the Contract was made and as to what will or will not be done in the future.  As such, this alleged misstatement does not constitute an affirmative misrepresentation under the NJCFA even though it may have been incorrect.  A mere "subsequent failure of the promisor to do what he has promised" is not recoverable in tort.  Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 563 (D.N.J. 2002).  Federal district courts interpreting New Jersey common law routinely hold that "fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." Id. at 564 (citing Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 144 (3d Cir. 2001)).  For example, one district court explained that "an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be." Id. (citing Emerson Radio Corp. v. Orion Sales, Inc., No. 95-6455, 2000 WL 49361, at *7 (D.N.J.2000)).  In this case, the Hun School's allegation in this connection is that Hunt mislead it with respect to submitting a claim under the insurance policy; not fraud in the inducement, but in the fulfillment of the contract.  Accordingly, the Hun School fails to state a claim under the NJCFA based on this allegation.

      The Hun School has not alleged that Hunt misrepresented its intent to perform its obligations under the contract when the contract was executed.  Rather, in all of its allegations, the Hun School merely alleges that Hunt failed to perform its obligations under the contract in that Hunt failed to adhere to the alleged standard of care and to obtain an insurance policy sufficient to protect Hunt from claim for the types of damages incurred, and thus, violated the NJCFA.

      However, a breach of contract is not per se unfair or unconscionable under the NJCFA:

> Because any breach of warranty or contract is unfair to the non-breaching party, the law permits that party to recoup remedial damages in an action on the contract; however, by providing that a court should treble those damages and should award attorneys' fees and costs, the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach.

Cox, 138 N.J. at 18.  Further, the Supreme Court of New Jersey has made clear that the statute defines violative conduct as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation or the knowing, concealment, suppression, or omission of any material fact. . ." Id. at 15.  In the instant case, Plaintiff does not allege bad faith or lack of fair dealing.  See Id. at 20.  Rather, the Hun School merely contends that Hunt failed to abide by its obligations under the contract and misled the Hun School as to the insurance coverage and deductible; without more, these claims do not state a claim under the NJCFA.

## IV.   Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion to dismiss Defendant's Seventh Counterclaim and Defendant's Seventh Counterclaim is stricken.

/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Dated:   May 11, 2009

13