UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HUNT CONSTRUCTION GROUP, INC., | : : : | |
| Plaintiff, | : : : | Civil Action No.: 08-3550 (FLW) |
| v. | : : | |
| THE HUN SCHOOL OF PRINCETON, | : : | |
| Defendant/Third-Party Plaintiff, | : : : | |
| v. | : : | |
| G.R. MURRAY INSURANCE and MICHAEL SABBAGH, | : : : | M E M O R A N D U M |
| Third-Party Defendants. | : : | O P I N I O N |
| HUNT CONSTRUCTION GROUP, INC., | : : : : | |
| Fourth-Party Plaintiff | : : | |
| v. | : : : | |
| INTERSTATE INDUSTRIAL CORP., et al., | : : : : | |
| Fourth-Party Defendants | : : | |

**ARPERT, U.S.M.J.**

This matter comes before the Court on Plaintiff Hunt Construction Group, Inc.'s ("Hunt") Motion to disqualify Drinker Biddle & Reath, LLP ("DBR") as counsel for Defendant The Hun School of Princeton ("Hun School" or "Defendant") [dkt. entry no. 54]. The Court has fully reviewed the parties' written submissions and conducted oral argument on April 15, 2010. For

the reasons set forth below, Hunt's Motion is denied.

**I.     BACKGROUND**

Hunt was engaged by the Hun School to serve as the general contractor for the construction of the school's new athletic facility, which was completed in 2007. The new athletic facility was built adjacent to the Hun School's existing athletic facility, which was to remain in place and undergo only minor renovations. Replacement of the gym floor in the old athletic facility was not contemplated nor included as part of the construction project.

The instant litigation arises from the Hun School's refusal to make the final payment due to Hunt under the prime construction contract ("Contract") based on damages the Hun School claims to have incurred as a result of having to replace the gym floor in the old athletic facility following a flood in July 2006 and subsequently repairing damage to the new floor caused by a second flood in July 2007. Hunt denies any liability to the Hun School and argues, among other things, that the Contract required the Hun School to obtain builder's risk insurance against hazards such as the floods that underlie the school's counterclaims. The Hun School contends that its insurance obligations under the Contract were satisfied by the policy that was procured on its behalf by its broker, GR Murray Insurance ("Murray"). The Hun School has joined Murray as a third-party defendant seeking indemnification in the event the Court determines the Hun School's damages should have been covered by the policy Murray obtained.

**A.     Hunt's Motion to Disqualify**

Hunt argues that DBR should be disqualified because its representation of the Hun School violates the Rules of Professional Conduct (the "RPCs"). Specifically, Hunt argues RPC 1.7(a)(2) requires disqualification on the grounds of a concurrent conflict of interest based upon

2

its contention that "DBR [specifically, DBR partner Dorothy Bolinksy] negotiated and drafted the Contract with representatives of Hunt and assisted the Hun School in procuring the insurance policy that is now central to this litigation." (Hunt's Br. at 2.) Hunt argues that "there is certainly a concurrent conflict of interest because DBR cannot represent Hun School in a matter in which its own liability to Hun School may be an issue, especially since the negligence claim against the Agent is the same as a negligence claim against DBR." *Id*. at 7. Hunt contends that DBR should be a co-defendant in the Hun School's third-party complaint against Murray, thus DBR is clearly in violation of RPC 1.7(a)(2). *Id*.

Hunt also cites RPC 3.7(a), under which a lawyer cannot be an advocate at trial if the lawyer is likely to be a necessary witness, and contends that DBR worked together with Murray and Mr. Sabbagh to advise the Hun School regarding the insurance it should procure and, therefore, DBR must withdraw from its current representation of the Hun School because Ms. Bolinksy is a potential witness to the dealings between the Hun School and the Agent. *Id*. at 2. Hunt asserts that third-party defendants Murray and Mr. Sabbagh identified "professionals retained by the Hun School" in their initial disclosures as individuals with information bearing on the claims. *Id*. at 8. Hunt emphasizes that Murray and Mr. Sabbagh also state that "'[t]hese as-yet-to-be-identified individuals may include professionals such as accountants, **attorneys** and/or insurance professionals who provided information and/or input concerning the insurance necessary under the construction contract.'"

Finally, Hunt cites RPC 1.10(a), Imputed Disqualification, as grounds for disqualifying DBR because the conflict of interest of one of its attorneys is imputed to all DBR attorneys. *Id*. at 6.

3

### B. The Hun School's Opposition to Hunt's Motion

The Hun School opposes Hunt's Motion arguing, (1) disqualification is unwarranted because Hunt has failed to satisfy its burden to prove the existence of a conflict that requires disqualification; (2) Hunt's Motion was filed for tactical reasons to gain an advantage in the litigation; and (3) the balance of hardship between Hunt and the Hun School weighs against disqualification.

The Hun School argues that there is not a conflict of interest because DBR did not procure the policy at issue.  Contrary to Hunt's interpretation of the CFO of the Hun School, Mr. Fleck's statements to mean that the Hun School relied on DBR to procure insurance, the Hun School contends that Hunt's "interpretation of Mr. Fleck's testimony is contradicted by the testimony of GR Murray's witness, and is also illogical – DBR is a law firm, not an insurance agent."  (The Hun School's Opp'n Br. at 9.)  The Hun School further contends that "[a]t no time did Mr. Fleck testify, as Hunt Construction argues, that DBR and GR Murrary 'worked in concert' to procure insurance, or that DBR 'advised Hun School on what insurance it should procure . . .'" *Id*. at 9-10.  Moreover, the Hun School asserts that Mr. Sabbagh admitted that he was expected by the Hun School to secure the insurance required by the contract. *Id*. at 9.  The Hun School argues that Hunt is improperly "asking the Court to hold that there is a potential claim against counsel requiring disqualification where an attorney is involved in a contract negotiation, an insurance agent procures the insurance required by the contract, and the client simply says the agent looks at it and the attorney looked at it, and 'we felt we were covered.'" *Id*. at 10.

Additionally, the Hun School argues that "any claim by the Hun School against DBR

4

would have to be based on DBR's role at the time of negotiation of the contract – of which Hunt Construction has been aware since 2004 and its current counsel has been aware of since at least 2007." *Id*. at 12.  Hunt's Motion to disqualify was filed two years after the commencement of this lawsuit, sixteen months after Murray identified the DBR lawyer involved in the contract negotiations as potential witnesses, four months after the deposition testimony cited by Hunt in support of the Motion, and after three separate mediation/settlement sessions among the parties. The Hun School contends that the instant Motion was filed as a tactical means to distract it from focusing on expert issues and Hunt's pending motion for summary judgment, and the Court should deny it accordingly.  *Id*. at 13-14 (citing *Resolution Trust Corp. v. Fidelity and Deposit Co. of Md.*, 1997 U.S. Dist. LEXIS 22177, slip op at *12-13 (D.N.J. Sept. 2, 1997)) (finding, based upon three-year delay, that the court may reasonably infer that no legitimate justification for the disqualification motion exists and that motion is motivated by tactical considerations).

Lastly, the Hun School argues that the instant Motion should be denied because disqualification of DBR would significantly prejudice it.  The Hun School explains that DBR has been its counsel since the outset of this litigation and, therefore, maintains that it would be unfair and prejudicial to require the Hun School to retain new counsel to represent it at this stage (a pretrial conference is to be held in May or early June, with trial in the Fall), because new "counsel would have great difficulty in gaining the knowledge DBR has with regard to the claims and defenses in this case." *Id*. at 15.

## II.    DISCUSSION AND ANALYSIS

The New Jersey Rules of Professional Conduct govern the conduct of attorneys admitted to this Court. *Greig v. Macy's Northeast, Inc.,* 1 F.Supp.2d 397, 399-400 (D.N.J. 1998).  The

New Jersey Rules of Professional Conduct are made applicable to attorneys admitted to this Court by Local Civil Rule 103.1, which provides in relevant part:

> The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by federal statute, regulation, court rule or decision of law.

L. Civ. R. 103.1(a). In determining whether to disqualify counsel, the Court must be satisfied that the movant has proved either that the New Jersey Rules of Professional Conduct are violated or that serious doubts exist as to the appropriateness of the representation. *Cordy v. Sherwin-Williams Co.,* 156 F.R.D. 575, 584 (D.N.J. 1994); *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo,* 144 F.R.D. 235, 238 (D.N.J. 1992). "[T]he party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified.'" *Id.* (*quoting Evans v. Artek Systems Corp.,* 715 F.2d 788, 791 (2d Cir. 1983)). Here, Hunt is seeking disqualification and, therefore, the burden of proof rests with it.

The Court of Appeals for the Third Circuit has noted that "[a]lthough disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case, disqualification never is automatic." *U.S. v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Disqualification of counsel is a "'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Alexander v. Primerica Holdings, Inc.,* 822 F.Supp. 1099, 1114 (D.N.J. 1993) (*quoting Schiessle v. Stephens,* 717 F.2d 417, 420 (7th Cir. 1983)). Generally, motions to disqualify are disfavored because they "can have such drastic consequences." *Rohm and Haas Co. v. American Cyanamid Co.*, 187 F. Supp. 2d 221, 226 (D.N.J. 2001). As a result, careful scrutiny of the facts of each case is required to prevent unjust results. *See Montgomery*

6

*Acad. v. Kohn*, 50 F.Supp.2d 344, 349 (D.N.J. 1999).  Furthermore, "[r]esolution of a motion to disqualify requires the court to balance 'the need to maintain the highest standards of the [legal] profession' against 'a client's right to freely choose his counsel.'"  *Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995) (citations omitted).

      Hunt has moved to disqualify DBR based on RPCs 1.7(a), 1.10.(a) and 3.7(a).  RPC 1.7(a)(2) states, in relevant part:

> Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

The prohibitions in RPC 1.7(a) are made applicable to a conflicted attorney's entire firm through RPC 1.10(a) which states, in part that:

> When lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by . . . RPC 1.7, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

      In determining whether a conflict exists under RPC 1.7, the Court notes that the parties do not dispute that an attorney client relationship exists between the Hun School and DBR.  Rather, the parties dispute whether the DBR's representation of the Hun School is materially limited by its own interests.  Hunt contends that DBR partner Dorothy Bolinsky played a role in procuring the insurance policy for the Hun School that is now central to this litigation and, consequently, created a concurrent conflict of interest because DBR should be named in the Hun School's third-party complaint.  During oral argument Hunt's counsel argued that the Court can infer that DBR partner Ms. Bolinksy determined, and advised Murray as to, the insurance

7

coverage required by the Contract. However, finding no direct evidence to support Hunt's argument, the Court is unconvinced and notes that while DBR represented the Hun School in connection with the Contract negotiations, DBR is a law firm and not an insurance agent. Murray was the insurance agent responsible for procuring the builder's risk policy required by the Contract. There is no evidence before the Court of the existence of any duty or undertaking by DBR to direct Murray as to the insurance required to meet the terms of the Contract. In this regard, it is noteworthy that neither Murray nor Mr. Sabbagh have asserted such a claim against DBR.

The Court also notes that Hunt's counsel has been aware of DBR's role in the negotiation of the Contract since as early as 2007, yet the Motion to disqualify was not filed until two years after the commencement of this lawsuit, sixteen months after Murray identified the DBR lawyer involved in the contract negotiations as potential witnesses, and four months after the deposition testimony cited by Hunt in support of the Motion. While there is no question that DBR was involved in the negotiation of the Contract between Hunt and the Hun School and some evidence that Ms. Bolinksy was consulted by Mr. Sabbagh concerning the contract language, the Court is not convinced that DBR was anything more than peripherally involved in the procurement of the builder's risk policy. Therefore, the Court finds that Hunt has not established a violation of RPC 1.7(a) and, by extension, finds no basis for disqualification under RPC 1.10(a).

Additionally, Hunt has moved to disqualify DBR pursuant to RPC 3.7(a), which provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3)

8

disqualification of the lawyer would work substantial hardship on the client.

The Court recognizes that Murray has identified "professionals" (including but not limited to attorneys who provided information and/or input concerning the insurance necessary under the construction contract) retained by the Hun School, as individuals with information bearing on the claims.  However, no specific individuals have been identified and this disclosure does not guarantee that Ms. Bolinksy or any other attorney of the firm will actually be called as witnesses at trial.  To date, no DBR attorneys have been deposed in connection with this case. More importantly, RPC 3.7(b) explicitly states, "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by RPC 1.7 or RPC 1.9."  Therefore, the Court finds no reason to delve into a detailed analysis of whether DBR should be disqualified because Ms. Bolinsky might be called as a witness at trial in light of the fact that the Court has not found a conflict under RPC 1.7.

### III.    CONCLUSION

For the reasons stated above, the Court finds that Hunt has failed to meet its burden in establishing that RPCs 1.7(a), 1.10(a) or 3.7(a) require the disqualification DBR as counsel for the Hun School.  Accordingly, Hunt's Motion to disqualify counsel [dkt. entry no. 54] is DENIED.  An appropriate Order accompanies this Memorandum Opinion.


Dated: April 28, 2010.

                                                s/ *Douglas E. Arpert*
                                                **DOUGLAS E. ARPERT**
                                                **UNITED STATES MAGISTRATE JUDGE**