**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                          :
HUNT CONSTRUCTION GROUP, INC.,  :     Civil Action No. 08-3550
                                          :
        Plaintiff,                 :
                                          :
v.                                        :     **OPINION**
                                          :
THE HUN SCHOOL OF PRINCETON,    :
                                          :
        Defendant.                 :
_____ :

**WOLFSON, United States District Judge:**

In the instant application, Plaintiff Hunt Construction Group, Inc. ("Plaintiff" or "Hunt") seeks attorneys' fees and costs under its subcontract agreement with Fourth Party Defendant Interstate Industrial Corp. ("Interstate"). Hunt seeks attorneys' fees and costs primarily based on Hunt's successful summary judgment motion against Defendant The Hun School of Princeton ("the School"), which success resulted in recovery of damages on Interstate's behalf and dismissal of the School's counterclaims against Hunt based on Interstate's alleged acts and omissions. In addition, Interstate cross-moves to audit Hunt's attorney fee records. For the following reasons, the Court appoints a Special Master to address what portion of the attorneys' fees and costs that Hunt seeks are properly attributed to Interstate. Interstate's cross-motion for an audit is denied as moot.

**I.     BACKGROUND**

While the underlying facts and procedural history of this suit are rather protracted, only a

1

limited background discussion is necessary to provide context for the instant motion.[1] The suit revolves around the School's commission of Hunt, as general contractor, and Interstate, as Hunt's subcontractor, to perform renovations to the School's gymnasium floor. As explained in my September 16, 2010 Opinion, two floods occurred in July 2006 and July 2007, while Hunt and Interstate were renovating the gymnasium and the surrounding area. The first flood, in July 2006, damaged the floor so greatly that it had to be replaced. The School bore the cost of that replacement, which was in excess of $317,013. The second flood, in July 2007, caused around $30,000 in damage to the new floor.

Just prior to the July 2006 flood, Interstate completed grading and excavation work near the outside of the School's gymnasium. According to the School, Interstate's failure to comply with all specifications applicable to its work either caused or contributed to the flood damage to the gymnasium in both July 2006 and July 2007. Specifically, the School contends that Interstate did not properly grade the modular walls on the road to the north of the gymnasium. See Mitchell Decl. in Supp. Def. Opp. to Pl. Mot. Summ. Jdmt., Exh. C, Morante Dep. 34:23 – 36:18: 124:6 – 124:12. When the storm came through in July 2006, the School further contends, Interstate's acts and omissions in responding to the storm caused the gymnasium to flood.

Once the renovations were completed, the School withheld $317,013 from the monies due Hunt, which amount essentially represents the costs incurred by the School in twice repairing the gymnasium floor. Of that amount, $163,839.05 was due to Interstate for its work. Thereafter, Hunt brought this action to compel the School to pay over the withheld funds. The School responded by

---

[1] For a more exhaustive recounting of the underlying facts, see the Court's September 16, 2010 Opinion.

asserting counterclaims related to the defective work it alleges contributed to the flood-related damage to the floor.

As noted, Hunt prevailed on its claims against the School for the reasons explained in my September 16, 2010 Opinion. Hunt, further, moved for summary judgment against Interstate on an indemnification claim rooted in the parties' subcontract. In the September 16, 2010 Opinion, I ruled that section 27.1 of the subcontract entitled Hunt to attorneys' fees and costs it incurred in defending against the School's counterclaim. Opinion dated September 16, 2010 at 47 ("Under subsection (c) of this provision, Hunt is entitled to reimbursement for its costs and attorneys' fees/disbursements in defending against the School's counterclaims based on Interstate's alleged defective work. To be clear, nothing in the provision's language suggests that Hunt is entitled to reimbursement for its costs and fees in prosecuting its affirmative claim against the School."). I rejected Hunt's argument that it was entitled to fees under section 33.1 of the subcontract.

Hunt initially moved for attorneys' fees and costs on September 30, 2010, and Interstate filed a motion, thereafter, requesting an audit of Hunt's counsel's bills. The parties' papers related to these motions were voluminous. However, because Hunt failed to supply a certification in support of its application that complied with Local Civil Rule 54.2, the Court denied its motion by way of an Order dated June 6, 2011, and ordered Hunt to re-file its motion with the proper documentation. The Court further ordered that, once Hunt's motion was re-filed, Interstate could "re-file its motion as a cross-motion to Plaintiff's re-filed motion, or address its concerns via opposition to Plaintiff's motion." Order dated June 6, 2011 at 2. Hunt subsequently re-filed its motion and Interstate filed a cross-motion to audit Hunt's fee records.

3

**II.     DISCUSSION**

As an initial matter, Hunt argues that its fee application is unopposed. Hunt reads Interstate's cross-motion to audit as simply that—only a cross-motion to audit its fees but not an opposition. I disagree with Hunt's formalistic interpretation of Interstate's papers. While Interstate's papers were filed as a cross-motion, the content of the papers includes challenges to the fees sought. Accordingly, I construe Interstate's papers as both an opposition to Hunt's motion and a cross-motion to audit Hunt's fees.[2] I now turn to Hunt's motion for fees and costs.

**A.     Hunt's Entitlement to Fees under the Subcontract**

New Jersey law governs interpretation of the subcontract's attorneys' fees provision. Indeed, as explained by the New Jersey Supreme Court in Litton Industries, Inc. v. IMO Industries, Inc., 200 N.J. 372 (2009):

> This is a contract case. Although the parties could have expressly provided in the contract what approach would be utilized, in the absence of express language in the agreement, [New Jersey courts] resort to [New Jersey] jurisprudence for attorneys' fee-shifting cases . . . in recognition of the fact that the parties to a contract are presumed to know the relevant legal principles and to have adopted them if they have not expressed a different understanding.

Id. at 388.

In New Jersey, "a prevailing party can recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract." Packard–Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 440, 771 A.2d 1194 (2001). In interpreting contractual attorneys' fees provisions, the New Jersey Supreme Court strictly construes those provisions "in light of [New Jersey's] general policy

---

   [2]   In this connection, I do not consider Interstate's reply to its cross-motion filed on July 28, 2011. Pursuant to Local Civil Rule 7.1(d)(3), a party may not file a reply to its own cross-motion.

disfavoring the award of attorneys' fees." Litton, 200 N.J. at 385.

In my September 16, 2010 decision, I held that Hunt is entitled to attorneys' fees and costs that it incurred in defending against the School's counterclaims, which were based on Interstate's alleged acts and omissions. My ruling was based on section 27.1 of Hunt's and Interstate's subcontract. In the instant application, Hunt seeks fees under that section as well as two additional provisions—sections 21.6 and 34.4 of the subcontract. Before addressing the fees sought under section 27.1, I first address whether Hunt is entitled to attorneys' fees and costs under these additional provisions.

Through section 21.6, Hunt requests fees and costs related to the contract claim it successfully asserted against the School, through which claim it recovered $163,839.05 on behalf of Interstate. Section 21.6 provides, in pertinent part:

> Subcontractor shall cooperate in the prosecution of claims filed by Subcontractor, and shall reimburse Hunt for all expenses and costs incurred by Hunt in connection with the preparation and prosecution of such claims against Owner or others who may be responsible, including without limitation, costs of litigation . . . and reasonable attorneys fees and disbursements.

Fedun Decl., Exh. 5. Sections 21.2 and 21.5 further make clear that, when a subcontractor files a claim requesting payment, Hunt is authorized to seek payment from the owner on behalf of the subcontractor. See id. at ¶ 21.2 ("If Subcontractor asserts a claim for damages under circumstances that entitle Hunt to make a claim for damages against the Owner . . . Subcontractor shall file with Hunt a written claim that meets the requirement of Section 21.5 ...."); id. at ¶ 21.5 ("With respect to any claim submitted by Subcontractor under this Section 21, Subcontractor shall prepare the claim in writing and in a format acceptable to Hunt ....") Accordingly, Hunt is entitled to fees under section 21.6.

5

Hunt, further, seeks an award of fees and costs pursuant to section 34.4 of the parties' subcontract for the expenses it incurred in prosecuting its indemnification claim against Interstate. Section 34.4 provides, in pertinent part, that

> [s]hould any dispute between Hunt and the Subcontractor proceed to . . . court, that forum shall award to the prevailing party all of its attorneys' fees, disbursements or costs as defined in Section 33.6 incurred in connection with the prosecution or defense of the dispute.

Id. According to section 33.6, "[w]henever reasonable attorneys' fees, disbursements or costs are referred to in this Subcontract, such terms include, without limitation, the following expenses paid or incurred by Hunt . . . (a) attorneys' fees; (b) paralegal fees; (c) appraisers' fees; (d) documentary evidence and expert witness costs; (e) arbitrators' fees and expenses; (f) court reporter charges; (g) publication costs; (h) title searches and examinations; (i) filing fees, recording fees, copying charges and the like, travel, lodging and meal expenses; (j) reasonable hourly charges for the time of Hunt's personnel; and (k) any other reasonable costs incurred by Hunt.

Based on the plain language of section 34.4, Hunt is entitled to recover reasonable attorneys' fees and costs related to prosecuting its indemnification claim against Interstate. My September 16, 2010 Opinion granted Hunt summary judgment on that claim. Although contractual attorneys' fees provisions are strictly construed, see Litton, supra at 385, section 34.4 is sufficiently broad to encompass the fees and costs related to the indemnification claim.

In sum, Hunt is entitled to reasonable fees and costs for its successful defense of the School's counterclaims, pursuant to section 27.1 of the subcontract. In addition, Hunt is entitled to recover reasonable fees and costs under section 21.6 for its successful prosecution of its counterclaims against the School. Finally, Hunt is entitled to reasonable fees and costs for the successful prosecution of its indemnification claim against Interstate, under section 34.4 of the parties'

agreement. Having clarified the extent of Hunt's rights under the subcontract, I now turn to the specific fees and costs requested.

### B.  Attorneys' Fees Lodestar Calculation

When ascertaining the dollar amount of an attorneys' fee award, the New Jersey Supreme Court applies "the same test for reasonable attorneys' fees in contract cases that we use in other attorneys' fee award cases in New Jersey." Litton, 200 N.J. at 386.  As explained by the Litton Court,

> [i]n determining the reasonableness of an attorneys' fee award, the threshold issue is whether the party seeking the fee prevailed in the litigation.  In that regard, the party must establish that the lawsuit was causally related to securing the relief obtained; a fee award is justified if the party's efforts are a necessary and important factor in obtaining the relief.

Id. (internal quotation marks and citations omitted).  Here, Hunt satisfies these tests because it successfully defended against the School's counterclaims and section 27.1 of the subcontract requires Interstate to reimburse Hunt for the fees and costs incurred.  Similarly, with respect to Hunt's successful prosecution of its indemnification claim against Interstate, section 34.4 obligates Interstate to reimburse Hunt.  Moreover, under section 21.6, Hunt is entitled to recover fees for its successful prosecution of its contract claim against the School.

According to Litton, "[t]he next step in determining the amount of the award is to calculate the "lodestar," which is that number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate."  Id. (quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)).  In this connection, because New Jersey's Rule of Professional Conduct ("RPC") 1.5(a) "commands that '[a] lawyer's fee shall be reasonable' in all cases, not just fee-shifting cases," the New Jersey Supreme Court directs courts to consider the following factors,

derived from RPC 1.5(a), in determining the amount of an attorneys' fee award:

> 1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charge in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.

Litton, 200 N.J. at 387 (quoting RPC 1.5(a)).

The reasonableness of the hours expended by counsel are evaluated by assessing whether they are equivalent to the time "competent counsel reasonably would have expended to achieve a comparable result." Id. Accordingly, excessive or unnecessary hours spent on the case are not compensable. Id. See also Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 545 (2009) ("the court need not award fees ... for advancing frivolous defenses, or for taking repetitive or delaying actions"). As for the hourly rate, the reasonableness of the prevailing counsel rates proposed must be evaluated in comparison to rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." Furst, 182 N.J. at 22 (internal quotes omitted).

8

Finally, under the principle of proportionality, the lodestar should be reduced if the prevailing party achieved only limited success in relation to the relief sought. See id.; Litton, 200 N.J. at 387. In addition, "when a party has succeeded on only some of its claims for relief, the trial court should reduce the lodestar to account for the limited success." Litton, 200 N.J. at 387. However, "if the same evidence adduced to support a successful claim was also offered on an unsuccessful claim, the court should consider whether it is nevertheless reasonable to award legal fees for the time expended on the unsuccessful claim." Id. For these aspects of the reasonableness analysis, "there is no precise formula ...." Id. Rather, "[t]he ultimate goal is to approve a reasonable attorney's fee that is not excessive." Id. With these principles in mind, I turn to the specific fees Hunt seeks here.

        **1.**     **Section 34.4 Indemnification Fees**

Turning first to Hunt's prosecution of the indemnification claim, Hunt seeks $67,157.75 in fees.[3] That amount is for work completed after this Court's September 16, 2010 Opinion was issued. See Fedun Decl., Exh. 1. It appears to represent the fees and costs Hunt incurred in seeking to enforce the indemnification claim between September 17, 2010 and May 2011; it does not appear to include fees and costs incurred in prosecuting the indemnification claim at the summary judgment stage.

The Court cannot award Hunt fees under section 34.4 at this juncture. For one, it is not clear from the Declaration of John Fedun, Esq., Hunt's counsel, to what extent the fees sought relate to Hunt's indemnification claim. By way of example, Mr. Fedun states that $18,466.50 was billed during the month of September 2010 (September 17 onward). He attaches to his declaration a bill

---

[3]    The $35,802.76 in costs that Hunt seeks are addressed infra.

dated October 13, 2010 that lists, inter alia, 1.60 hours for researching "contract and policies for fees liability" by Jeffrey Gans, Esq. on September 17, 2010, and 2.50 hours for reviewing "contracts and correspondence . . . rules and case law regarding fee awards" also performed by Mr. Gans on that date. The Court cannot discern from these type of vague entries whether Mr. Gans' review was limited to the indemnification claim, or whether his work also encompassed Hunt's request for fees under sections 27.1 or 21.6.

More importantly, Hunt failed to provide the Court with a meaningful discussion in its papers of how the New Jersey lodestar factors should be applied to its fee application. As the New Jersey Supreme Court has made clear in Litton, courts must apply the lodestar factors unless an alternative methodology for determining the reasonableness of an attorneys' fee request is specified in the parties' agreement. See Litton, 200 N.J. at 385. The subcontract here does not set forth any alternative methodology. To be sure, it is not just Hunt that failed to address the New Jersey lodestar factors in its papers—Interstate also failed to provide the sort of meaningful discussion dictated by New Jersey case law in its opposition/cross-motion. Both parties' papers included little to no discussion of the applicable legal standards.

Hunt's failure to address the lodestar factors in its briefing, along with its failure to separate out the hours attributable solely to the indemnification claim, severely impair the Court's ability to determine how many hours Hunt should be awarded at this juncture. To properly adjudicate Hunt's motion, the Court would have to expend further judicial resources by requiring Hunt to re-file its motion yet another time and by sifting through numerous time records and bills. This Court's full docket prevents it from continuing to expend judicial resources on a fee application already once re-filed.

Therefore, in light of the difficulty involved in teasing out the appropriate amount of hours properly attributed to the indemnification claim, and in light of having already directed Hunt once to re-file its motion for fees, I find it appropriate to appoint a Special Master to review Hunt's application and recommend how many hours be awarded under the New Jersey lodestar factors. I have the authority to appoint a special master pursuant to Federal Rule of Civil Procedure Rule 53(a)(1)(C), which provides that "a court may appoint a master . . . to address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." I further find it appropriate for both parties to equally bear the cost of the Special Master, in light of each party's failure to properly brief the motion for fees and cross-motion to audit fees. See Fed.R.Civ.P. 53(a)(3) ("In appointing a master, the court must consider the fairness of imposing the likely expenses on the parties and must protect against unreasonable expense or delay.").

### 2. Section 21.6 Contract Claim Fees

Hunt seeks $317,013 in fees for its prosecuting the contract claim against the School by employing a percentage-based methodology that is not found in the subcontract or New Jersey case law. It describes its methodology as follows: it obtained summary judgment in the amount of $317,013 against the School, and $163,839.05 of that amount was for Interstate's work. Because this amount represents 51.7% of the total amount obtained, Hunt asserts that it is entitled to recovery of 51.7% of its costs and fees incurred in prosecution of the contract claim against the School.

Hunt has not provided any case law in support of this methodology, which is facially inconsistent with the New Jersey Supreme Court's directive in Litton to consider each of the RPC 1.5 factors in determining the reasonableness of the fee. Nor is any percentage referenced in the

11

subcontract. As aptly stated in a recent unpublished Appellate Decision, "application of the lodestar method . . . cannot be shortcut by application of a percentage cap that is not found in the contract being enforced." Barry Associates, LLC v. 300 Allenhurst, LLC, 2011 WL 5864323, *3 (App.Div. Nov 23, 2011) (citing Litton, 200 N.J. at 388-89).[4] Indeed, the New Jersey Supreme Court and the Appellate Division have vacated and remanded attorneys fees awards in which the trial court failed to consider the lodestar factors and the principle of proportionality. See e.g., Litton, 200 N.J. at 389; R.M. v. Supreme Court of New Jersey, 190 N.J. 1, 13 (2007) (remanding where the Court could "not ascertain with confidence whether the trial court applied the long-standing 'lodestar' methodology for the determination of counsel fee awards"); Italiano v. Rudkin, 294 N.J.Super. 502, 505–07 (App. Div.1996) (remanding a counsel-fee determination because the court did not consider pertinent factors). Thus, Hunt's proposed methodology must be rejected because it does not take into account New Jersey's RPC 1.5 lodestar factors. For this reason, the Court refers calculation of a reasonable fee under section 21.6 to a Special Master to ascertain what amount of fees are properly attributable to Interstate.

### 3. Section 27.1 Counterclaim Defense Fees and Costs

With regard to the amounts sought under section 27.1 for Hunt's successful defense of the School's counterclaims, Hunt seeks a total of $396,160.70 in attorneys' fees. As with its proposed fees under section 34.4, however, both Hunt and Interstate fail to discuss the New Jersey lodestar

---

[4] While the Barry decision is non-precedential, the Court finds its analysis on this point persuasive. Furthermore, to be clear, the percentage-based methodology proposed by Hunt to determine the reasonableness of the number of hours expended is distinct from the proper use of percentages in applying an enhancement or reduction. For example, a court may properly apply a twenty percent contingency enhancement to a statutory fee award. See H.I.P. (Heightened Independence and Progress, Inc.) v. K. Hovnanian at Mahwah VI, Inc., 291 N.J.Super. 144, 161-62 (App. Div. 1996).

factors in their briefing. The Court must consider each of these factors in ruling on Hunt's application. Without meaningful discussion by the parties, the Court is left with the burden of reviewing voluminous time records and bills to ascertain what amount of fees should be awarded. This burdensome task is further occasioned by Hunt's failure to break out the various categories of fees sought in the Declaration of John Fedun, Esq. In that declaration, Mr. Fedun lists the number of hours that each attorney spent on the case as a whole—he does not specify how many hours were spent on the indemnification claim versus the contract claim versus the counterclaims. Rather, he merely attaches the firms' bills to the declaration, upon which bills someone handwrote what portion of each time entry should be apportioned to each type of claim.[5] This presentation of Hunt's fee application unfairly requires the Court to splice out hours instead of Mr. Fedun certifying to the amounts attributable to each claim in his declaration. For these reasons, as explained in connection with my section 34.4 and section 21.6 analyses, the Court finds its appropriate to refer Hunt's request for fees under section 27.1 to the Special Master.

**C.  Reasonable Hourly Rate**

As noted above, the Court must also determine whether the hourly rates sought by Hunt are comparable to "similar services by lawyers of reasonably comparable skill, experience, and reputation in the community." Furst, 182 N.J. at 22 (internal quotes omitted). Indeed, Hunt submitted a certification from a New Jersey counsel as to the reasonableness of the hourly rates charged. See Fedun Decl., Exh. 4 (Declaration of Jeffrey Cruz, Esq.). Nonetheless, in light of the

---

[5]  To be clear, there is a spreadsheet attached to Mr. Fedun's Declaration that summarizes the total amount billed each month on each type of claim. See Fedun Decl., Exh. 1. However, this spreadsheet does not specify which tasks were completed for each type of claim, the time spent on each task, or the total number of hours per claim.

large amount of work involved in first determining what amount of hours should be awarded, the Court further directs the Special Master to address the hourly rate in his Report and Recommendation.

### D. Costs

Hunt seeks costs pursuant to Local Rule 54.1 for its prosecution of the indemnification claim against Interstate, and for its defense of the counterclaims. As with its proposed attorneys' fee amounts, Hunt did not break out the amounts by claim in a declaration by Mr. Fedun. See Bill of Costs, Exh. A. Accordingly, the Court finds it appropriate for the same reasons explained above to appoint the Special Master to prepare a report on the costs aspect of Hunt's motion.

### E. Cross-Motion to Audit

In light of this Court's appointment of a Special Master to determine what amount of hours are properly compensable, Interstate's cross-motion to audit Hunt's fee application is denied as moot.

### III. CONCLUSION

For the foregoing reasons, the Court appoints a Special Master to address Hunt's motion for attorneys' fees and costs. Interstate's cross-motion to audit fees is denied as moot. An appropriate Order shall follow.

Dated: January 13, 2012                               /s/ Freda L. Wolfson
                                                      Honorable Freda L. Wolfson
                                                      United States District Judge